DocuSign Envelope ID: A7BB7FCB-90D6-474E-B449-2015D4E48EA6

# Settlement Agreement & Release

The Parties to this Settlement Agreement and Release ("Agreement") are George Hoffman ("Hoffman"), both individually and on behalf of the individuals who have joined this matter pursuant to 29 U.S.C. § 216(b) whose names appear on Exhibit A to this Agreement (the "Additional Opt-in Plaintiffs"), and Regal Beloit America, Inc., and all of its affiliated companies, including but not limited to its parent company, Regal Beloit Corporation (hereinafter, collectively referred to as "Regal Beloit").

## Recitals

WHEREAS, Hoffman filed a claim against Regal Beloit, *Hoffman v. Regal Beloit Corp.,* E.D. Wis. Case No. 18-cv-1491 ("lawsuit") alleging impermissible rounding practices in violation of the Fair Labor Standards Act ("FLSA") and Wisconsin wage and hour laws';

WHEREAS, after the lawsuit was filed, eighteen individuals affirmatively opted-in to the lawsuit by filing consent forms with the Court to assert their claims under the FLSA;

WHEREAS, prior to engaging in significant litigation practice, the Parties agreed to engage in good-faith settlement discussions for Hoffman and the Additional Opt-In Plaintiffs, in order to minimize the costs of litigation;

WHEREAS, Regal Beloit denies the allegations in Hoffman's complaint and denies any and all liability;

WHEREAS, Regal Beloit has provided payroll and time data as well as information relevant to Hoffman's allegations to Hoffman's Counsel, Hawks Quindel, S.C., and the Parties engaged in good-faith settlement negotiations;

WHEREAS, Hawks Quindel, S.C., has represented Hoffman and negotiated with Regal Beloit at arm's length throughout this matter to ensure that Hoffman and the Additional Opt-In Plaintiffs are properly compensated for time spent allegedly working for Regal Beloit from September 24, 2015 through August 7, 2019;

WHEREAS, on August 7, 2019, Hoffman and Regal Beloit reached a settlement in principal to resolve the claims of Hoffman and the Additional Opt-In Plaintiffs in this matter;

WHEREAS, this Agreement does not affect or impact the rights of any other potential class or collective members who did not affirmatively opt-in to the action;

WHEREAS the Parties desire to resolve this matter and avoid the costs, risks, and delays associated with litigation.

NOW, THEREFORE, in consideration of the above Recitals, which are hereby acknowledged to be true and correct and made a part of this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby expressly acknowledged, the Parties agree as follows:

I. **General Terms of Settlement**

   A. In exchange for the Release of Claims and other promises contained herein, Regal Beloit will, in accordance with the manner and timing provided for in Sections III(A)–IV(C), below, make payments to Hoffman, the Additional Opt-In Plaintiffs, and Hoffman's Legal Counsel, Hawks Quindel, S.C., in the amounts identified in Section III, below, and Exhibit A to this Agreement.

   B. Hoffman and the Additional Opt-In Plaintiffs understand and acknowledge that, although Regal Beloit is entering into this Agreement and making the payments hereunder, Regal Beloit does not admit to any wrongdoing or violation of Federal or State statutes or regulations of any kind, including those cited in Section II.A. below, and expressly denies the same.

II. **Release of Claims, Acknowledgments, and Agreement to Cooperate**

   A. Hoffman's Release of Claims.

   Hoffman hereby and forever completely releases and discharges Regal Beloit from any and all claims of any kind which arise out of, or are in any manner based upon or related to, the employment relationship between Hoffman and Regal Beloit based on any act or omission that occurred up to the date of his execution of this Agreement. Hoffman's release of claims against Regal Beloit, includes but is not limited to: (1) claims pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et. seq., including any claim for retaliation pursuant to 29 U.S.C. § 215(a)(3), and Wisconsin's wage and hour laws, including Wis. Stats. Chapters 103 and 109, and Wis. Admin Code Ch. DWD §§ 272 and 274; (2) any state common law wage claims, including, but not limited to, breach of contract (whether express or implied), promissory estoppel, unjust enrichment and quantum meruit; (3) Title VII of the Civil Rights Act of 1964, as amended; (4) Section 1981 of the Civil Rights Act of 1866 (42 U.S.C. § 1981); (5) the Genetic Information Nondiscrimination Act; (6) the Americans with Disabilities Act, as amended; (7) the Equal Pay Act; (8) the National Labor Relations Act; (9) the Employee Retirement Income Security Act of 1974; (10) state or

federal parental, family and medical leave acts; (11) the Uniformed Services Employment and Reemployment Rights Act (USERRA), or any other local, state, or federal military and/or veterans rights act, or any other claim based on veteran status; (12) or arising under any other local, state or federal statute, ordinance, regulation or order, or which involve a claim or action for wrongful discharge, defamation, misrepresentation, violation of public policy, invasion of privacy, emotional distress, breach of contract (express or implied) and/or any other tort or common law cause of action.

B.    Additional Plaintiffs' Release of FLSA Claims.

Upon approval of this Settlement Agreement, the Additional Opt-In Plaintiffs who have filed their consent forms with the Court and whose names appear on Exhibit A to this Agreement will release their FLSA claims alleged in the Complaint for alleged unpaid wages, which arise out of Regal Beloit alleged rounding practices from September 24, 2015 through August 7, 2019.

C.    Additional Opt-In Plaintiffs' Release of Wisconsin Law Claims.

Each Additional Opt-in Plaintiff who signs and cashes either of the checks issued for their Wisconsin law damages ("Wisconsin law checks"), as listed on Exhibit A, shall release their Wisconsin law claims alleged in the Complaint for unpaid overtime wages, which arise out of Regal Beloit's alleged rounding practices from September 24, 2015 through August 7, 2019. No Wisconsin law claims for any opt-in Plaintiff shall be deemed released unless one of the Wisconsin law checks is cashed. If an Additional Opt-In Plaintiff does not sign and cash both of his or her Wisconsin law checks, he or she does not waive or release his or her Wisconsin law claims. Regal Beloit hereby explicitly agrees to waive the following claims that it might otherwise assert to preclude an Additional Opt-in Plaintiff from asserting his or her Wisconsin law claims in the future if an Additional Opt-in Plaintiff does not cash his or her Wisconsin law check: *res judicata*, claim preclusion, or waiver.

D.    Acknowledgments and Agreement to Cooperate.

Hoffman acknowledges and agrees that the amounts payable pursuant to this Agreement resolve a bona fide dispute regarding the payment of minimum wages, liquidated damages, civil penalties, compensatory and punitive damages, and his legal fees and costs. Hoffman further agrees that this settlement represents fair and reasonable compensation for any unpaid wages he may have accrued during his

employment with Regal Beloit, inclusive of any claim for liquidated damages, and that Regal Beloit does not owe him any further compensation or any other amounts for work performed during his employment with Regal Beloit. Hoffman further acknowledges and agrees he has been given sufficient time to read this Agreement and its attached Exhibits A-C prior to his execution of it, understands their terms, and has consulted with Hawks Quindel, S.C., about the legal effects of this Agreement. Finally, Hoffman agrees to direct his counsel, Hawks Quindel, S.C., to take any action necessary to ensure that the terms of this Agreement are fully carried out, and authorizes Hawks Quindel, S.C., to work cooperatively with Regal Beloit to seek judicial approval of this agreement, including preparation of court required pleadings.

**III. Settlement Payments**

    A.    Settlement Fund.

As consideration for the releases in Section II above, Regal Beloit shall pay $40,000.00 prior to any reversion of the Wisconsin Law Funds (the "Settlement Fund"). This Settlement Fund is inclusive of attorneys' fees and costs, liquidated damages, and a service payment to Hoffman as described below. If the Settlement Agreement is not approved by the Court, Regal Beloit will cease to have any obligation to pay or provide any portion of the Settlement Fund, the releases in Section II above will not be effectuated, and this matter will move forward in litigation.

    B.    Allocation of the Settlement Fund.

        1.    Service Payment - $500.00 of the Settlement Fund shall be allocated as a service payment to Hoffman in recognition of his involvement in bringing this claim, his efforts to ensure a recovery on behalf of the Additional Opt-In Plaintiffs, and the assistance he provided Plaintiff's Counsel in bringing this matter to resolution. Regal Beloit will issue an IRS Form 1099 to Hoffman for this service payment as so required by the law.

        2.    Attorneys' fees and costs - $20,000.00 of the Settlement Fund shall be allocated as attorneys' fees.

        3.    FLSA Fund – Of the remaining portion of the Settlement Fund, $9,750.00 shall be allocated to the FLSA Fund. Hoffman and the Additional Opt-In Plaintiffs shall receive two checks for his or her pro-rata share of the FLSA Fund in the amounts set forth for such individual in Exhibit A to this Agreement (one check

4

DocuSign Envelope ID: A7BB7FCB-90D6-474E-B449-2015D4E48EA6

containing the FLSA W-2 payment, and one check containing the FLSA 1099 payment). For tax purposes, the FLSA W-2 payment shall constitute unpaid wages and shall be subject to regular payroll withholdings. Regal Beloit will report the unpaid wages portion to each of the Additional Opt-In Plaintiffs on an IRS Form W2. The FLSA 1099 payment shall be attributed to liquidated damages for which each of the Additional Opt-In Plaintiffs will receive an IRS Form 1099 from Regal Beloit.

4. Wisconsin Law Fund – Of the remaining portion of the Settlement Fund, $9,750.00 shall be allocated to the Wisconsin Law Fund. Each of the Additional Opt-In Plaintiffs shall receive two checks for his or her pro-rata share of the Wisconsin Law Fund in the amounts set forth for such individual in Exhibit A to this Agreement (one check containing the Wisconsin W-2 payment, and one check containing the Wisconsin 1099 payment). For tax purposes, the Wisconsin W-2 payment shall constitute unpaid wages and shall be subject to regular payroll withholdings. Regal Beloit will report the unpaid wages portion to each of the Additional Opt-In Plaintiffs on an IRS Form W2. The Wisconsin 1099 payment shall be attributed to liquidated damages for which each Additional Opt-In Plaintiff will receive an IRS Form 1099 from Regal Beloit. Each check issued for payment out of the Wisconsin Law Fund shall state on the back "For Release of Wisconsin Law Claims."

5. Checks sent pursuant to Sections III.B.3 and III.B.4 shall be sent together and accompanied by the Notice attached as Exhibit C to this Agreement.

6. After the expiration of 180 days following issuance of checks to the Additional Opt-in Plaintiffs from the Wisconsin Law Fund, if any pair of checks (Wisconsin W2 and Wisconsin 1099) issued to the same person have not been cashed, the funds for those checks shall revert back to Regal Beloit and the individual whose funds reverted will not have released their Wisconsin law claims. However, if only one of the two Wisconsin law checks issued to an Additional Opt-In Plaintiff is cashed, in order for their Wisconsin law claims to be deemed released, the funds attributable to the check that was not cashed must be paid to the cy pres recipient pursuant to Section IV.C.3.

IV. **Settlement Approval Process.**

DocuSign Envelope ID: A7BB7FCB-90D6-474E-B449-2015D4E48EA6

A. Approval of Settlement.

The Parties will file with the Court, by December 13, 2019, a Joint Motion for Approval of Settlement and a Proposed Order Approving Settlement, and supporting brief, in a form mutually agreed to by the Parties. Plaintiff's Counsel will draft these documents. A fully executed copy of this Agreement, with exhibits, will be attached to the Joint Motion for Approval of Settlement. The Parties will cooperate and take all necessary steps to effectuate judicial approval of this Settlement Agreement. The joint motion will request the following relief:

1. Entry of an order approving of the settlement terms memorialized in this Settlement Agreement as fair, reasonable, and adequate.

2. Entry of an order and a mandatory injunction requiring Regal Beloit make the payments provided for in herein.

B. Entry of Order and Mandatory Injunction.

If this Settlement Agreement is approved by the Court, an Order Approving Settlement, and directing the entry of judgment against Regal Beloit Corporation, pursuant to Federal Rule of Civil Procedure 54(b) shall be entered, in the form of Exhibit B, in addition to a Mandatory Injunction as follows:

1. Approving the Settlement Agreement as fair, reasonable, and adequate;

2. Declaring the Settlement Agreement to be binding on Regal Beloit, Hoffman, and the Additional Opt-In Plaintiffs;

3. Dismissing with prejudice Hoffman and the Additional Opt-In Plaintiffs' claims as provided for in Section II above;

4. Indicating the amount of attorneys' fees and costs to be awarded to Hawks Quindel consistent with the Settlement; and

5. Requiring Regal Beloit to make the payments as provided for in Exhibit A in accordance with the payment schedule referenced in Section IV.C.2.

C. Settlement Administration.

DocuSign Envelope ID: A7BB7FCB-90D6-474E-B449-2015D4E48EA6

If the Court grants approval of this Settlement Agreement, the settlement will be administered by Plaintiff's Counsel. The parties agree to the following procedure for settlement administration:

1. Settlement Allocations. Individual settlement allocations shall be made in the amounts set forth in Exhibit A. Each check will indicate that it is void after one hundred and eighty days.

2. Payment schedule. Within thirty days following the Court's Order granting approval of the Settlement Agreement, Regal Beloit will deliver settlement checks to Plaintiff's Counsel settlement checks totaling $40,000.00. The allocation of each payment is provided in Exhibit A. Within seven days of receiving these checks, Plaintiff's Counsel will mail them to the class members.

3. Cy pres. Any portion of the FLSA Settlement Fund that remains undeliverable or is otherwise not tendered within two hundred and ten days after the final payment shall be paid to The Employee Rights Advocacy Institute for Law & Policy, 2201 Broadway, Suite 310, Oakland, CA 94612. Regal Beloit shall deliver to Plaintiff's Counsel an accounting of unclaimed FLSA settlement funds (including name of recipient and amount of checks not tendered) within two hundred and twenty days after the final payment. Within seven days of receiving the accounting, Plaintiff's Counsel shall either approve or object to the accounting. Once approved by Plaintiff's Counsel, Regal Beloit shall send the cy pres payments and also provide a copy of the check when it is mailed to The Employee Rights Advocacy Institute for Law & Policy.

## V. No Press Release or Advertisement of Agreement

Hoffman shall direct his counsel not to issue a public statement regarding this Agreement, including but not limited to, through a press release or any other publicized written document or advertisement. If Hoffman receives a request from a member of the press to comment on the Agreement, he will state the matter has been resolved and the documents are a matter of public record and will direct his counsel to do the same.

## VI. No Knowledge of Other Claimants or Claims

Plaintiff represents that his Counsel are presently not aware, nor have they been contacted by, any other individuals asserting claims against Regal Beloit up to the date of his execution of this Agreement.

## V. Breach

If Regal Beloit breaches this Agreement by failing to make the payments provided herein, Regal Beloit shall have ten calendar days to cure such a breach. Failure to cure such a breach will result in Plaintiff's Counsel bringing a motion for contempt of the Court's mandatory injunction. Hoffman and the Collective Class Members shall be entitled to recover from Regal Beloit any attorneys' fees and costs incurred resulting from any breach of this Agreement. The Court shall retain jurisdiction over this matter for this sole purpose. The Parties agree that the payments contemplated herein cannot be discharged in bankruptcy. Further, Regal Beloit affirmatively states that it does not currently anticipate filing for bankruptcy or any similar insolvency proceeding, and has not retained counsel to file for or obtain advice regarding potentially filing for bankruptcy.

## VIII. Governing Law

This Agreement shall be construed and interpreted in accordance with the laws of the State of Wisconsin.

## IX. Entire Agreement

This document and its Exhibits A-C constitute the entire Agreement between the Parties with regard to the matters set forth herein, and supersedes any prior written or oral agreements. In entering into this Agreement, Hoffman expressly acknowledges that he is not relying on advice from anyone from Regal Beloit, including Regal Beloit's principals, owners, or attorneys, or any other individual or entity other than Hawks Quindel, S.C.

## X. Severability

If any provision of this Agreement shall be found invalid or unenforceable in whole or in part, that provision shall be deemed excised from this Agreement.

## XI. Counterparts

The Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties. The Agreement may be executed by electronic means, including DocuSign or a similar service and/or an image (.pdf) of a signature.

## XII. Ratification

Hoffman hereby authorizes and ratifies all that his attorneys may have done or may do in effectuation of this Agreement, consistent with the terms of this

Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement.

12/15/2019
Dated

George Hoffman on behalf of himself, and the Collective Class Members

Dated

Regal Beloit Corp.

By: _____

Its: _____

Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement.

_____    _____
Dated                         George Hoffman on behalf of himself,
                              and the Collective Class Members


12/16/2019                    *[signature: Scott Scapelli]*
_____    _____
Dated                         Regal Beloit Corp.

                              By: Scott Scapelli

                              Its: Segment General Counsel

9

QB\60892768.1